**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LISA M. DAVENPORT,** | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 1:16-0494** |
| | : | |
| **v.** | : | |
| | : | **(JUDGE MANNION)**[1] |
| **RICHARD SPENCER, SECRETARY** | | |
| **of the DEPT. of the NAVY,** | : | |
| | : | |
| **Defendant** | : | |

## M E M O R A N D U M

### I.    BACKGROUND

Plaintiff, Lisa M. Davenport, initially filed this action against defendant Ray Mabus,[2] the former Secretary of the Department of the Navy, after she was removed from her position as Supervisory Security Specialist at the Navy Depot in Mechanicsburg, Pennsylvania.

On October 31, 2016, plaintiff filed an amended complaint, (Doc. 11), which asserted two counts, namely, an appeal from the February 19, 2015 final decision of the Merit Systems Protection Board ("MSPB") affirming the decision of the Administrative Judge ("AJ") finding that the Navy properly

---

[1]This case was reassigned to the undersigned, upon the retirement of the Hon. William Caldwell.

[2]On August 3, 2017, Richard Spencer became the Secretary of the Navy, and thus the court has substituted him for Mabus as the proper defendant.

removed her from her position for physical inability to perform her job and denying her affirmative defense of failure to accommodate, Count I, and a disability discrimination claim under the Rehabilitation Act of 1973 ("RA"), [29 U.S.C. §794](), Count II.[3] Specifically, in Count I, plaintiff alleges that her civil service rights were violated and that she was discriminated against by the Navy for failing to reasonably accommodate her medical conditions under the RA. This count presents a "mixed case" because it combines a civil service claim with a claim under a federal antidiscrimination law.

On November 14, 2017, the court granted plaintiff's motion to sever Count I and stated that it would decide the claims in Count I before addressing Count II. (Docs. 30 & 31). The court also continued the stay of discovery regarding Count II until it decides Count I.

The administrative record was then filed and the parties filed briefs regarding Count I. (Docs. 34, 40 & 41).

For the following reasons, the court will **AFFIRM** the decision of the MSPB and enter judgment for the defendant with respect to Count I of plaintiff's amended complaint.

---

[3]In Count II, plaintiff also raises a gender discrimination claim regarding her termination. (Doc. 11 at ¶83). She alleges that the Navy discriminated against her due to her gender in violation of Title VII when she was removed from her position of Supervisory Security Specialist and replaced with an unqualified man.

## II.   MATERIAL FACTS[4]

Plaintiff transferred from the New Cumberland Army Depot to the Navy in 2006, as a Security Specialist for Naval Supply Systems Command Weapon Systems Support ("NAVSUP WSS") at the Navy Depot in Mechanicsburg, Pennsylvania. In this position, plaintiff was eligible for situational telework. There is no dispute that plaintiff had medical conditions dating back to 2001, including Fibromyalgia and Chronic Fatigue Syndrome. Plaintiff's WSS supervisor, Michael Zinski, had approved her as eligible for situational teleworking allowing her to work from home on occasion when she experienced "flare-ups" of her Lyme disease, Chronic Fatigue Syndrome, and Fibromyalgia.

Plaintiff testified that she was sick with her stated medical conditions since 2001, and that the nature of her conditions was such that she had rare flare-ups of extreme exhaustion and fatigue, but that the flare-ups were not a constant thing. She stated that from 2001 to the end of 2012, her flare-ups were minimal in duration, i.e., "a couple of days, maybe a week or so, possible two weeks." (AR 84-87).

On August 28, 2011, plaintiff was promoted to the position of Supervisory Security Specialist at the Naval Support Activity ("NSA"), Commander Navy Region Mid-Atlantic ("CNRMA") at the Navy Depot in Mechanicsburg, Pennsylvania. Following the functional realignment of

---

[4]The material facts are derived from the administrative record as well as plaintiff's briefs and defendant's brief that cite to the record. (Doc. 35).

security from NAVSUP WSS to CNRMA, plaintiff was not eligible for situational telework since the equivalent Security Supervisor positions across the other fifteen CNRMA installations were ineligible for telework and, since CNRMA had not adopted a telework agreement at the time of the functional realignment.

The Supervisory Security Specialist for NSA was "the Security Director for one of the Naval Activities that comprise[d] Regional Security Directorate, Public Safety Program, Commander, Navy Region Mid-Atlantic." As Supervisory Security Specialist, plaintiff's duties included being responsible for "physical security, Antiterrorism/Force Protection ("AT/FP") and law enforcement", and responsible to "develop[] and implement[] policies and procedures for the protection of property, facilities, operations, or material from unauthorized disclosure, misuse, theft, assault, vandalism, espionage, sabotage, or loss." As such, plaintiff managed the NSA Mechanicsburg Security Program.

Also, plaintiff was "the senior advisor to the Installation Commander [] of the [NSA], Mechanicsburg, Pennsylvania on all phases of law enforcement, anti-terrorism/force protection, and physical security operations." Additionally, plaintiff was responsible for supervising and directing a Naval Security Force of thirty-eight civilians at the Navy Depot in Mechanicsburg.

Plaintiff also had "frequent face-to-face and telephone contact with senior military and high ranking civilian government officials within [the Navy], Joint Chief of Staffs, and [the Department of Defense ("DOD")] charged with

force protection/anti-terrorism responsibilities," including the Commanding Officer, Executive Officer, subordinate staff and other installation program managers.

Moreover, in her position, plaintiff had to have access to the Department of Defense's Secret Internet Protocol Router Network ("SIPRNET"), and DOD Instruction ("DODI") 1035.01 directed that access to SIPRNET by the Navy could not occur from alternative worksites, such as an employee's home, due to security considerations. Additionally requirements of plaintiff's position was that she had to attend classified security briefings, which could be held with little advance notice, and to coordinate responses to security incidents.

On October 31, 2012, plaintiff notified her chain of command, namely, Thomas Tyree, Deputy Director for Operations, CNRMA, Charles Hargraves, Site Manager for NSA Mechanicsburg, and Seth Farris, Operations Manager for NSA Mechanicsburg, that she was experiencing a "reactivation of her [L]yme disease", and, as a result, that she may be requesting leave for partial days, full days or extended leave.

On January 1, 2013, plaintiff requested that she be allowed to telework. In support, she submitted two letters from her treating physician, Dr. Seltzer. The doctor indicated that he was treating plaintiff for active Lyme disease, Chronic Fatigue Syndrome and Fibromyalgia. Dr. Seltzer also noted that plaintiff's conditions "may result in symptoms including extreme pain and fatigue, which at worst [may] leave her completely incapacitated." Dr. Seltzer stated that the symptoms may require plaintiff to "miss work, follow a modified

5

schedule, work from home, etc."

Consequently, on January 7, 2013, plaintiff sent an email to her chain of command and requested an alternative work schedule that combined half days, telework and leave, stating that it would allow her to attend medical appointments that were "necessary to continue to diagnose and treat" her conditions.

On January 11, 2013, plaintiff submitted a formal request to telework.

Plaintiff's first-level supervisor, Tyree, conducted an interactive dialogue, regarding her accommodation request for telework, with plaintiff, Farris and Carrie Hawk, EEO Specialist. Tyree recommended the disapproval of plaintiff's request for telework on January 18, 2013.

On January 23, 2013, Dr. Seltzer sent the Navy a letter responding to a request for more information regrading plaintiff's need to telework. He stated that it was difficult to predict the duration of her current symptoms, but that it was reasonable to assume they "will last another 4-6 weeks, if not longer." Dr. Seltzer also stated that telework "will assist in [plaintiff's] work as physical activity takes a severe toll on her, and anything that can be done to limit her exertion will allow [plaintiff] to work more effectively."

On January 23, 2013, Tyree forwarded plaintiff's request for situational telework to CNRMA Chief of Staff, Captain Mary Jackson, the approving official. Tyree recommended that plaintiff's request be denied for several reasons, to wit: (1) plaintiff failed to provide adequate medical documentation; (2) Security Directors, such as plaintiff, had to report to the office to meet with

subordinate staff and command management; (3) Security Directors could only access SIPRNET at the office, in accordance with DOD rules, to change the Force Protection levels; and (4) the Total Workforce Management System indicated that the Security Director position was ineligible for telework.

On February 4, 2013, Jackson denied plaintiff's request for situational telework.

On March 1, 2013, Farris sent plaintiff a letter notifying her of the denial of her request for an accommodation in the nature of teleworking. In particular, Farris advised plaintiff that he could not provide her with an accommodation that would "enable [her] to perform the essential functions of [her] job or any other available position within the command." Ferris' letter also stated that his decision was supported by the medical documentation provided by Dr. Seltzer as well as plaintiff's own telework request.

Plaintiff did not return to work for the Navy after March 1, 2013, due to her medical conditions.

On March 10, 2013, plaintiff sought a reconsideration of the denial of her situational telework request stating that her position was "administrative," not "supervisory," and that she could perform the essential functions of her job from home. In support of her telework request, Dr. Garabedian, another one of plaintiff's treating physicians, advised the Navy that he was treating plaintiff for infections, "uncontrolled hypertension", and gastrointestinal problems. He also stated that due to her conditions and an exacerbation of her symptoms, she was unable to perform her job description and would require two weeks

of leave.[5]

On March 31, 2013, Dr. Garabedian wrote a letter to the Navy indicating that plaintiff's condition had "greatly deteriorated" over the preceding months, and he requested that the Navy provide plaintiff with six to eight weeks of leave in order for her to recover.

Plaintiff's request for reconsideration was denied on April 5, 2013, by Hargraves. In his denial letter, Hargraves stated that he expected plaintiff to perform the essential functions of her Supervisory Security Specialist position, which he described, in pertinent part, as follows:

> forty hours of work per week; the ability to put eyes on security incidents [on site] and provide directions [to] staff; direct and supervise the security force; monitor day-to-day security operations; respond to incidents that require higher authority guidance; the ability to keep command staff informed; participation in face-to-face meetings at a moment's notice to represent command interests from both security and tenant commands; frequent face-to-face meetings with senior military and high ranking civilian officials, as well as security briefs, conferences, meetings and working groups, and some of the meetings require a secure location which may only be accomplished at the duty station.

(AR 399-400).

Additionally, in his letter, Hargraves indicated that plaintiff's prior telework agreement was executed with NAVSUP WSS, and not CNRMA, and that CNRMA had appropriately denied her request based on Region Telework Policy. Hargraves also pointed out that no other Region Security Specialist position was eligible for situational telework, and that plaintiff's position was

---

[5]Dr. Garabedian's letters are found at Doc. 35-4.

re-coded to be consistent with other CNRMA positions and the Region Telework Policy.

On April 29, 2013, Dr. Garabedian sent another letter to the Navy advising it that plaintiff's condition had again "greatly deteriorated", and he requested that the Navy give her an additional six to eight weeks of leave so that she could rest at home in order to stabilize her condition.

On April 30, 2013, Dr. Garabedian sent the Navy an FMLA medical certification stating that plaintiff was not "able to perform work of any kind." Subsequently, Dr. Garabedian concluded that plaintiff could only tolerate up to four hours of teleworking from home subject to frequent reassessments, and he submitted an explanation to the Navy for the plaintiff's work limitations he recommended. In particular, the doctor opined that a "return to [plaintiff's] regular employment schedule, with the associated physical and mental stressors," would have severely compromised "her health and potentially cause a new major setback."

On June 17, 2013, Dr. Garabedian again sent a letter to the Navy stating that plaintiff's condition had not changed and that she would require an additional six to eight weeks of leave from work before returning in order to stabilize her condition.

On July 17, 2013, Dr. Garabedian sent yet another letter to the Navy requesting that the Navy give plaintiff an additional six to eight weeks in order to stabilize her condition.

Thus, the record reveals that plaintiff's medical condition did not improve

since March 1, 2013, and her prognosis in July of 2013 was that she could not return to work until the end of August or September of 2013.

On August 8, 2013, Farris sent plaintiff a "Notice of Status," due to her continued absence from work since March 1, 2013. The Notice stated, in pertinent part, as follows:

> While I am concerned about your health and well-being, I must also be concerned with the efficiency of work operations as well. Your inability to maintain a regular work schedule as the Security Director is contrary to the agency's mission. If your return to full-time work is not foreseeable in the near future, then your position needs to be filled with someone who is available to work on a full-time basis.
>
> The position you encumber is critical to this Command and it is imperative that you report for work no later than **9 September 2013**, at which time your entitlement to approved leave expires. If you fail to do so or if you are unable to resume and maintain your full-time schedule, I shall propose your removal because your continuing absence is creating a hardship that this Command can no longer endure.

On August 26, 2013, Farris sent plaintiff a Notice of Proposed Removal and stated that it was proposed plaintiff be removed from her position effective September 27, 2013 due to her inability to perform as a result of her medical condition. (AR 173). The Notice contained a Specification of the Charge, which stated, in relevant part:

> The medical evidence that you have provided shows that you have permanent medical conditions. Because of these medical conditions, you have not been able to return to work or fulfill the requirements of your position since 1 March 2013. Your position is one that needs to be filled and this action will promote the efficiency of the service.

On September 10, 2013, plaintiff responded through her attorney to the

Notice recognizing that her medical condition prevented her from performing her assigned work, but requesting that the Navy consider reasonable accommodation for her condition, including telework, reassignment to another position, and the approval of leave until she could return to her job. However, there was no indication that plaintiff's condition had improved. (AR 199).

On September 20, 2013, Hargraves issued a Notice of Decision sustaining the charge of inability to perform due to a medical condition, denying plaintiff's request for telework, and removing plaintiff from her position with the Navy effective September 27, 2013. (AR 175-176).

On October 28, 2013, plaintiff filed an appeal of her removal with the MSPB, but it was dismissed without prejudice.

Plaintiff then re-filed her appeal with the MSPB on July 21, 2014. An Administrative Judge ("AJ") then conducted a hearing on November 6, 2013, and November 10, 2014.

At plaintiff's hearing before the AJ, Dr. Garabedian corroborated plaintiff's testimony that she had minimal disability from her medical conditions based on the history she gave him, and stated that she was relatively stable until she experienced a "sudden breakdown around 2013." Dr. Garabedian also stated that while plaintiff was capable of teleworking in January of 2013 when she first requested CNRMA to allow her to do so, she was not capable of teleworking at the time of the hearing based on the deterioration of her condition since January of 2013. He also stated that he completed the FMLA certification in April of 2013 indicating that, at that time, plaintiff was unable

11

to perform work of any kind, but he explained that he did so since the Navy did not approve plaintiff's request to telework and he believed that if plaintiff went back to work without the accommodation her condition was going to be made worse. (AR 135-139).

On November 13, 2014, the AJ issued an Initial Decision affirming plaintiff's removal from her position with the Navy. The AJ found that neither permanent, full-time telework nor situational telework was a reasonable accommodation for plaintiff. Specifically, the AJ found that: (1) the Navy had proven its charge of plaintiff's inability to perform her job as a result of a medical condition; (2) plaintiff had failed to prove her affirmative defense of disability discrimination despite the fact that she was an individual with a disability since she could not perform all essential functions of her position due to her medical conditions even with reasonable accommodation rendering her as not a "qualified individual"; and (3) the penalty of removal was reasonable and promoted the efficiency of the Navy's service.[6]

On December 17, 2014, plaintiff appealed the AJ's Initial Decision to the MSPB by filing a Petition for Review ("PFR").

On February 19, 2015, the MSPB issued a Final Decision denying plaintiff's mixed case appeal challenging her removal and the denial of her defense of failure to accommodate and, affirming the AJ's Initial Decision. In particular, the MSPB found that the AJ was correct in sustaining the Navy's

---

[6]Since the detailed findings of the AJ are in his decision contained in the administrative record, (AR 320- 328), they are not fully repeated herein.

charge of removal due to plaintiff's inability to perform her job based on the essential functions of her position as Supervisory Security Specialist, and that he correctly denied plaintiff's affirmative defense of disability discrimination.[7]

In finding that the Navy properly removed plaintiff from her position, (AR 351), the MSPB concluded:

> [plaintiff] was unable to perform the core duties of her position and that her continued absence from work not only negatively impacted her performance, but also had an adverse effect on the agency. We thus concur with the [AJ] that the agency proved the elements of its charge, and we find it uncontroverted that there exists a nexus between [plaintiff's] medical condition and her absence from employment. Similarly, based on the nature of [plaintiff's] medical conditions and diagnosis, we agree with [AJ] that reassignment was neither reasonable nor feasible.

(internal citations omitted).

The MSPB also found that the AJ correctly decided that plaintiff failed to establish disability discrimination citing to the plaintiff's medical records, including Dr. Garabedian's opinion that, as of February 2013, plaintiff was medically incapacitated and unable "to perform work of any kind", as well as the doctor's subsequent continued opinions that plaintiff was unable to work.

On March 23, 2015, plaintiff appealed the MSPB's Final Decision to the Equal Employment Opportunity Commission ("EEOC"). She argued that the MSPB erred since it failed to apply the proper test to determine whether she was a "qualified" employee with a disability regarding her disability discrimination defense, and that it erred by applying the wrong analysis to her

---

[7]The MSPB's decision is in the administrative record, (AR 347- 354), and is not fully repeated herein.

request for telework, i.e., it applied an essential function analysis as opposed to an undue hardship analysis.

On February 19, 2016, the EEOC issued a decision affirming the MSPB's Final Decision. The EEOC concurred with the decision of the MSPB that plaintiff "did not demonstrate that she was subjected to discrimination or denied a reasonable accommodation." The EEOC concluded that the MSPB's Final Decision was a "correct interpretation of the laws, rules, regulations, and policies governing [the] matter and [was] supported by the evidence in the record as a whole."

On March 23, 2016, plaintiff filed a timely appeal of the MSPB's Final Decision with this court. (Doc. 1). She then filed her amended complaint on October 31, 2016. (Doc. 11). As relief, plaintiff requests this court to reverse the MSPB's Final Decision and to reinstate her to her former position of Security Director with back pay and front pay. Plaintiff also requests compensatory damages for emotional distress.

## III. DISCUSSION

In Count I, plaintiff alleges that her removal from the Navy violated the civil service law and the RA. In Count II, she alleges a disability discrimination claim under the RA. As such, this is a "mixed case." As the court previously stated, (Doc. 30 at 3), "[a] 'mixed case' exists when the plaintiff's claim alleges she was subjected to a serious adverse employment action, one encompassed by the Civil Service Reform Act of 1978, and that such action

14

was at least partially motivated by unlawful bias in violation of federal antidiscrimination laws." When a federal employee brings a mixed case, i.e., asserts a discrimination claim together with a civil service appeal from a decision of the MSPB, judicial review lies in the district court. Perry v. Merit Systems Protection Board, 137 S. Ct. 1975, 1979 (2017). Thus, this court has subject matter jurisdiction over the present mixed discrimination case appealing the Final Decision of the MSPB pursuant to 5 U.S.C. §7703(b)(2). *See id.*

Plaintiff's civil service appeal in Count I challenging her removal from the Navy and seeking reinstatement must be decided by the court solely upon the administrative record as developed at the agency level.[8] 5 U.S.C. §7703(c); *see also* Makky v. Chertoff, 541 F.3d 205, 211 (3d Cir. 2008); Vanyan v. Hagel, 9 F.Supp.3d 629, 642 (E.D.Va. 2014) ("a district court's review of any discrimination claims presented before the MSPB is limited to the administrative record and is thus subject to a more deferential standard established by statute."). A court can only overturn the MSPB's decision if it is: (1) arbitrary, capricious or an abuse of discretion; (2) unsupported by substantial evidence or otherwise not in accordance with law; or (3) obtained without compliance with lawful procedures. *See* 5 U.S.C. §7703(c); Vanyan v. Hagel, 9 F.Supp.3d at 642; Barnes v. Small, 840 F.2d 972, 979 (D.C.Cir. 1988).

---

[8]As mentioned, the court previously severed Count II. As such, the court only considers Count I.

"To show that the MSPB's decision is not arbitrary and capricious, defendant needs only show that the decision has 'a rational basis in the law.'" Rand v. Geithner, 730 F.Supp.2d 118 125 (D.D.C. 2010) (citation omitted). "Furthermore, the Court must uphold the MSPB's decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). The burden is on the plaintiff to demonstrate errors in the MSPB's decision. Hawkins v. Soc. Sec. Admin., 368 Fed.Appx. 136, 139 (Fed. Cir. 2010).

The court finds that the decisions of the MSPB that plaintiff was properly removed from her position with the Navy and that plaintiff did not establish her defense of failure to accommodate were not arbitrary or capricious, were not obtained without compliance with lawful procedures, and were based on substantial evidence.

First, the MSPB found that the Navy established its charge to remove plaintiff from her position, i.e., inability to perform her job based on her medical conditions. Plaintiff contends that this decision is not supported by substantial evidence since the Navy failed to prove each element of the charge that she was unable to perform the essential functions of her position as Supervisory Security Specialist. She also states that the Navy failed to prove that it was unable to reasonably accommodate her sometimes disabling medical conditions. Plaintiff points out that her medical conditions are not always disabling, and that they are only disabling when they flare-up, which is why she was previously approved for situational telework at her prior

position as Supervisory Security Specialist with NAVSUP WSS. As such, plaintiff contends that the Navy did not prove the charge of inability to perform since there was not substantial evidence that her "sometimes disabling medical conditions could not be accommodated by situational teleworking when accommodation of her flare-ups of those medical conditions were needed."

In order for an agency to remove an employee for inability to perform due to a medical conditions, the agency must establish that the employee has a medical condition, that there are observed deficiencies in the employee's performance or conduct, and there is a nexus between the medical condition and the observed deficiencies. Slater v. DHS, 108 MSPB 419 (2008).

Additionally, "an agency must establish three elements before it can take an adverse action against an employee, such as its removal of [plaintiff] for physical inability to perform the functions of h[er] position", namely, "[i]t must prove (i) that the charged conduct occurred, (ii) a nexus with the efficiency of the service, and (iii) that the penalty imposed was reasonable. Jones v. Dept. of Transp., 295 F.3d 1298, 1303 (Fed. Cir. 2002).

There is no dispute that plaintiff had medical conditions and that she had not reported to work since March 1, 2013 due to her medical conditions. The record is also undisputed that plaintiff's position with the Navy was full-time and required her to report to NSA Mechanicsburg, Monday through Friday, eight hours per day, that her position required attendance of "regular and routine meetings, subordinate staff and other installation program

17

managers", and to access the SIPRNET, which could not be accessed from outside of the Depot due to security concerns. There was an abundance of evidence in the record showing that plaintiff's medical conditions prevented her from performing the core duties of her Supervisory Security Specialist position.[9] The record revealed that some of the duties which were essential functions of plaintiff's job included conducting a comprehensive review and analysis of physical security, providing policy and written technical guidance, developing and maintaining current physical security plans, representing the agency at meetings on site and collaborating with law enforcement, and conducting staff visits to ensure security protocol compliance.

As such, plaintiff was required to supervise and direct a Naval security force of about forty people, including assigning and evaluating their work, coordination of disciplinary actions, response to employee complaints and grievances and interviewing candidates for security positions.

Next, the record showed that plaintiff was not able to safely or efficiently perform the core duties of her job due to her medical conditions, and that her continued absence from work caused by her conditions negatively impacted her performance and adversely affected the Navy. Moreover, plaintiff's own treating physician submitted documentation indicating that plaintiff could not perform any work as of February 2013.

---

[9]A position's "core duties" are the essential functions of a job, or the fundamental job duties of the position. *See* 29 C.F.R. §1630.2(n)(1). All of the core duties of plaintiff's position are found at AR 322-324.

18

It was undisputed that at the time of the AJ's Initial Decision, plaintiff had been off from work for over one year due to her medical conditions and there was no indication when she would be able to return to work. Further, some of plaintiff's essential job functions were being performed by other employees. The records also showed that plaintiff's reassignment was not feasible, and that her removal was the only option in light of her medical conditions and diagnosis.

"[A]n agency may initiate a nondisciplinary removal action where the employee is absent and there is no foreseeable end to such absence." Jones, 295 F.3d at 1309 (citation omitted). Further, "the 'foreseeable end' of an employee's absence refers to whether and when that employee would again be capable of performing the duties and functions of his or her position." *Id*. (citation omitted). Here, the record shows that plaintiff's conditions rendered her unable to return to work and that there was no indication of when she would be able return to work, and thus her absence from work had no foreseeable end. *See id.* Nor is "[a]n agency [ ] required ... to indefinitely retain an employee on its rolls who cannot work due to poor health." *Id*. (citation omitted).

Thus, the Navy established that a nexus existed between plaintiff's medical conditions and the observed deficiencies in her performance, and it showed that the charged conduct occurred along with a nexus with the efficiency of the service since "medical inability to perform one's duties necessarily disrupts the efficiency of the service." Stevens v. Dept. of Air

19

Force, 81 Fed.Appx. 342, 343 (Fed. Cir. 2003).

Based upon the stated evidence, neither the AJ nor the MSPB erred in sustaining the Navy's determination that plaintiff was unable to perform the core duties of her job in light of her medical conditions. *See* Hall v. Dep't of the Treasury, 264 F.3d 1050, 1060 (Fed. Cir. 2001) ("[T]he evaluation of and weight to be given to ... [the] evidence in the record are judgment calls that rest primarily within the discretion of the Board."). As such, the MSPB relied upon relevant evidence that a reasonable mind would "accept as adequate to support [its] conclusion." *See* McEntee v. Merit Sys. Prot. Bd., 404 F.3d 1320, 1325 (Fed. Cir. 2005).

The court also finds that the MSPB's decision that plaintiff's sometimes disabling medical conditions could not be reasonably accommodated with situational teleworking was supported by substantial evidence. It is undisputed that Supervisory Security Specialist positions at the other CNRMA installations were not eligible for any type of teleworking. It is also undisputed that essential functions of plaintiff's job simply could not have been performed from home, such as using the SIPRNET, accessing classified information, traveling, and the required many face to face interactions with other employees at the Navy Depot. *See* Tudor v. Dept. of the Treasury, 639 F.3d 1362, 1366 (Fed. Cir. 2011).

Thus, the finding by the MSPB that plaintiff was medically unable to perform her job and that the Navy's decision to remove her from her position was not "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." <u>Hawkins</u>, 368 Fed.Appx. at139.

The court also finds that plaintiff's defense of failure to accommodate was properly rejected by the MSPB. Specifically, the MSPB found that plaintiff was not a qualified individual with a disability because she was unable to perform the essential functions of her job with or without an accommodation. (AR 352-353). In fact, the MSPB found that, based on her medical conditions, plaintiff failed to show that she was capable of working at all.

Plaintiff's affirmative defense was raised under §504 of the RA.

Section 504 of the RA, <u>29 U.S.C. §794(a)</u>, states, in relevant part:

> No otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

"To state a claim under §504, a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) she was discriminated against based on her disability." <u>Reed v. Schuylkill Health System</u>, 2013 WL 647912729, *3 (M.D.Pa. Dec. 9, 2013) (citation omitted).

The court in <u>Decker v. Alliant Technologies, LLC</u>, 871 F.Supp.2d 413, 430-31 (E.D.Pa. 2012), detailed the elements of a failure to accommodate claim, and stated:

21

"Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." Taylor, 184 F.3d at 306. For an employer "to be found liable for discrimination on the basis of failure to accommodate, the plaintiff must prove '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination ... [which] in this context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities.'" Hohider, 574 F.3d at 186–87 (quoting Williams, 380 F.3d at 761) (internal quotations omitted).[10]

Additionally, "a plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA and RA." Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa., 483 Fed.Appx. 759, 763 (3d Cir. 2012). "To make out such a claim, a plaintiff must show that the accommodation [s]he seeks is reasonable, ..., i.e., that it is "necessary to avoid discrimination on the basis of disability." Id. at 763 (internal citation omitted) (quoting 28 C.F.R. §35.130(b)(7)). Plaintiff has the "initial burden of demonstrating that h[er] requested accommodations were reasonable, i.e., necessary to permit h[er] meaningful participation; upon making such a showing, the burden shifted to the defendants to demonstrate that the requested accommodations were unreasonable." Id. (citations omitted).

---

[10]The court uses the same standard to analyze a failure to accommodate claim under the ADA and the RA. See Ridley School Dist. v. M.R., 680 F.3d 260, 282-83 (3d Cir. 2012) ("[T]he substantive standards for determining liability under the Rehabilitation Act and the ADA are the same...").

Here, the record shows that the plaintiff had disabilities under the meaning of the RA, that the Navy was aware of plaintiff's disabilities at all relevant times and, that it took an adverse employment action against plaintiff, i.e., removed her from her position. However, even though plaintiff was disabled, the MSPB found that the record showed that she was not a "qualified individual with a disability" because she was unable to perform the essential functions of her position with or without a reasonable from the Navy.

A "qualified individual" is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). Under the EEOC regulations, there are two prongs to this inquiry: (1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position. 29 C.F.R. §1630.2(m). "A duty is an 'essential function' of the job if it is 'fundamental,' and not 'marginal,' to the employment position." Freeman v. Chertoff, 604 F.Supp. 2d 726, 732-33 (D.N.J. 2009) (citing 29 C.F.R. §1630.2(n)(1)).

The MSPB relied upon evidence in the record which showed that plaintiff could not be accommodated since she was not able to work due to her medical conditions. In fact, the record showed that plaintiff was out on sick

leave for an extended period of time, that her diagnoses indicated that her conditions were not improving, and her physician opined that she could not perform any work as of February of 2013. (AR 212). Nor did plaintiff's medical records indicate when she would be capable of working with or without accommodation.

The MSPB considered the evidence in the record and correctly found that despite the fact that plaintiff had a disability giving her a right to a reasonable accommodation, there was not an accommodation available that would have allowed her to continue her job with the Navy. No doubt that "an agency is required to make a reasonable accommodation for the known physical and mental limitations of a disabled person unless doing so would cause undue hardship." Thibeault v. Merit Systems Protection Bd., 611 Fed.Appx. 975, 977 (Fed. Cir. 2015) (citing 29 C.F.R. §1630.9(a)). Additionally, "[w]hen determining if an agency failed to provide reasonable accommodations, a claimant must prove that such an accommodation was available at the relevant time." Id. at 978 (citation omitted). Further, "[w]hile the agency is required to assign a disabled employee to a position he can perform, if one exists, it is not required to generate such a position when it does not reasonably exist", and it is not required to modify duties essential to the employee's position. Id. (citations omitted).

Substantial evidence supports the MSPB's finding that plaintiff was not able to perform her job duties at home since, as explained, the essential

functions of a Supervisory Security Specialist required her on site presence. *See* Hawkins, 368 Fed.Appx. at 139 (court found that substantial evidence supports the MSPB's determination that plaintiff was not able to "perform [her] job duties at home" since her "job was required to be performed in a secure building, on a secure computer with access to personal data such as individual credit card and social security numbers.").

Further, the MSPB found that, even if plaintiff was a qualified individual, her requested accommodation, i.e., situational telework or work periodically when she was medically able, imposed an undue burden on the Navy, and that plaintiff would not have been able to perform some of the essential functions of her job, including participation in discussions regarding classified information, reading confidential messages sent to her office, and updating classified information systems.

Moreover, the MSPB concluded that, "[b]ased on her treating physician's conclusion that she was completely incapacitated, [plaintiff's] request to telework on an as-needed basis could not have been an effective accommodation which would have allowed her to perform the essential functions of her position."

As such, there was substantial evidence in the record to support the MSPB's finding that there was not any accommodation that would have enabled plaintiff to perform the essential functions of her Supervisory Security Specialist position.

Finally, substantial evidence support the MSPB's finding that plaintiff's removal promoted the efficiency of the Navy's service, and that the penalty was reasonable under the circumstances of the case. "An agency is inherently entitled to require an employee to be present during scheduled work times." Hawkins, 368 Fed.Appx. at 141 (citation omitted).

## IV.    CONCLUSION

Based on the foregoing, the court finds that the record shows that the MSPB's Final Decision was not arbitrary or capricious, was not unsupported by the evidence, and did not violate any procedures required by law. As such, the MSPB's Final Decision will be **AFFIRMED** and, the defendant will be **GRANTED** judgment with respect to Count I of plaintiff's amended complaint, (Doc. 11). A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: May 8, 2019**

16-0494-02.wpd